934 F.2d 318
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Owen DOYLE, Chester Haworth, Martin A. Hatcher, partners,
trading and doing business as TRIAD MRI, a
partnership, Plaintiffs-Appellants,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellee.
 No. 90-2709.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided May 29, 1991.
As Amended June 21, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Eugene A. Gordon, Senior District Judge. (CA-89-794-G-C)
 Edgar Love, III, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., for appellants.
 Barbara Brandon Weyher, Yates, McLamb & Weyher, Raleigh, N.C. (Argued), for appellee; Dan J. McLamb, Yates, McLamb & Weyher, Raleigh, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before CHAPMAN, Circuit Judge, TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation, and FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiffs, a group of physicians practicing neurology in Greensboro, North Carolina under the firm name of Triad MRI, appeal the entry of summary judgment against them in this action on a property insurance policy issued to them by St. Paul Fire and Marine Insurance Company (St. Paul). Plaintiffs alleged that the policy covered the entire amount of their loss of earnings and extra expenses resulting from the mechanical breakdown of a diagnostic machine known as a magnetic resource imager (MRI) which losses were stipulated to be $182,782. Applying a provision of the policy limiting recovery for such losses to $100,000 (which amount St. Paul paid to plaintiffs prior to the filing of the action without prejudice to plaintiffs' right to sue for the remainder of their claim) the district court granted St. Paul's cross-motion for summary judgment. We agree with the district court's construction of the policy and affirm.
 
 
 2
 The introduction to the insurance policy in question reads: This policy protects against a variety of losses. There are also some restrictions. We've written the policy in plain, easy-to-understand English. We encourage you to read it carefully to determine what is and is not covered as well as the rights and duties of those protected.
 
 The preamble to the policy further states:
 
 3
 Your policy is composed of General Rules, an explanation of What To Do If You Have A Loss, one or more Coverage Summaries, and one or more Insuring Agreements explaining your coverage. It may also include one or more endorsements. Endorsements are documents that change your policy. The agreements and endorsements included when this policy begins are listed below.
 
 
 4
 Included in the list of the agreements and endorsements pertinent to decision here are the following:
 
 
 5
 Health Care Facility Property Protection Coverage Summary
 
 
 6
 ("Coverage Summary")
 
 Health Care Facility Property Protection
 
 7
 ("Property Protection Form")
 
 Health Care Facility Blanket Earnings
 
 8
 ("Earnings Endorsement")
 
 
 9
 The Coverage Summary reads in pertinent part as follows:
 
 
 10
 This Coverage Summary describes each insured item and showns [sic] limits and extent of coverage under your Health Care Facility Property Protection.
 
 
 11
 Under "Description and location of covered property" is shown an office building on Wendover Avenue in Greensboro, North Carolina, but under "Limit of Coverage" there is no amount of coverage stated for this building, business contents or business income. There is, however, a limit of coverage of $1,200,000 for "Blanket Earnings And Expenses" and the "Level Of Protection" for this coverage is "3."
 
 
 12
 The parties agree that the MRI was "specialized medical equipment" as that term is defined in the policy and that the loss in question was caused by a mechanical breakdown of this equipment. Nothing else appearing, coverage for loss of earnings attributable to breakdown of any kind of equipment would derive from the Earnings Endorsement. The insuring agreement therein reads in pertinent part as follows:
 
 
 13
 This endorsement changes your Property Protection.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 This endorsement adds earnings and extra expense coverage to your Property Protection. The locations this endorsement applies to, limits of coverage, level of protection and deductible are shown in the Coverage Summary.
 
 Blanket Earnings and Expense Coverage
 
 17
 We'll pay your actual loss of earnings as well as extra expenses that result from the necessary suspension of your operations during the period of restoration caused by direct physical loss or damage to property at an insured location. The loss or damage must occur while this endorsement is in effect and must be due to a covered cause of loss.
 
 
 18
 These provisions are followed by an "Exclusions--Losses We Won't Cover" provision which reads:
 
 Exclusions--Losses We Won't Cover
 
 19
 All of the exclusions in your Property Protection apply to this endorsement.
 
 
 20
 From this provision it is seen that in order to ascertain if breakdown losses are excluded from coverage we are required to refer back to the Property Protection Form. There we find this language:
 
 Exclusions--Losses We Won't Cover
 
 21
 These exclusions apply to all levels of protection.
 
 
 22
 When we use the word "loss" in this section we also mean damage.
 
 
 23
 And near the end of four and one-half pages of exclusions the following appears:
 
 
 24
 Mechanical Breakdown. This exclusion applies to all covered property except where specific coverage is provided for Specialized Medical Equipment covered under Level 3 Protection.
 
 
 25
 We won't cover loss to covered property caused or made worse by:
 
 
 26
 . mechanical breakdown;
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 But if a loss not otherwise excluded results from one of these causes, we'll pay for the loss that results directly from the covered cause.
 
 
 30
 Thus it is seen that losses caused or made worse by mechanical breakdown are not covered "except where specific coverage is provided for Specialized Medical Equipment covered under Level 3 Protection." Continuing what has by now taken on the appearance of a wild goose chase we locate on the ninth page of the nineteen pages which make up the Property Protection Form the following:
 
 Level 3 Protection
 
 31
 Under Level 3, we'll insure the covered property against risks of direct physical loss or damage unless excluded in the Exclusions-Losses We Won't Cover section.
 
 
 32
 Under Level 3 Protection we'll also provide the following:
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 . limited breakdown coverage for your specialized medical equipment.
 
 
 36
 This is followed--finally--by a provision which constitutes the real source of the breakdown coverage for specialized medical equipment. It reads:
 
 
 37
 Specialized Medical Equipment Breakdown Coverage. We'll pay up to $100,000 for the following breakdown losses to specialized medical equipment used in your facility for medical research, patient diagnosis, treatment or therapy and other medical purposes. Specialized medical equipment includes equipment such as electrocardiographs, kidney dialysis machines and C.A.T. scanners.
 
 
 38
 Plaintiffs advance two arguments in support of their contention that they are not limited in their right to recover under the policy to the $100,000 limit clearly set forth in the provision just quoted. First, they maintain that the $1,200,000 limit stated in the Coverage Summary is controlling, and second, they argue as a fall-back position that in any event the policy is ambiguous, and that application of the universally accepted rule of strict construction of ambiguities in insurance policies against the party responsible for the ambiguity (here allegedly St. Paul) mandates judgment for the plaintiffs. We find these arguments to be without merit.
 
 
 39
 There is no dispute as to the applicable case law, as both parties essentially agree that the case is governed by the standard North Carolina cases on contract interpretation. Most helpful here is the general principle cited by both sides and the district court that "[t]he various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." Woods v. Nationwide Mutual Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). When this principle is applied and the three pertinent endorsements to the policy in suit are read together it is abundantly clear that while the overall limit for earnings and expense losses attributable to causes insured against is $1,200,000, a separate, special limit of $100,000 applies to such losses arising from mechanical breakdown of specialized medical equipment.
 
 
 40
 Plaintiffs argue that the mechanical breakdown coverage provided under the Level 3 provision of the Property Protection Form should only be read as providing that mechanical breakdown is a covered cause of loss and that the $100,000 coverage limit stated therein is not applicable. This interpretation simply fails to give effect to every provision of the insurance contract. Specifically, plaintiffs' interpretation ignores the provision that all of the exclusions in the Property Protection Form apply to the Earnings Endorsement. Plaintiffs' attempt to read selectively the provisions of Level 3 Protection as adding a covered cause of loss without the attached $100,000 limit goes against the very principle of law cited by plaintiffs in support of their position. Woods, supra.
 
 
 41
 It is true, as plaintiffs contend, that the provisions of Level 3 Protection refer to "risks of direct physical loss or damage," but plaintiffs overlook the further provision that only limited breakdown coverage is provided for specialized medical equipment and that the limit of such coverage is $100,000. Ironically, as St. Paul has pointed out, if the specialized medical equipment coverage provided applies only to direct physical loss or damage to the equipment (admittedly not involved here) there would be no coverage at all for plaintiffs' loss in this case since mechanical breakdown is clearly excluded from coverage "except where specific coverage is provided for Specialized Medical Equipment covered under Level 3 Protection."
 
 
 42
 What has been said in response to plaintiffs' first argument serves to dispose of their second argument concerning ambiguity. In this policy St. Paul has achieved its laudable purpose of writing the contract in plain English, and there is no suggestion of ambiguity in the language employed. The problem has arisen because of the unfortunate location of several provisions relating to coverage for losses due to mechanical breakdown in three separate parts of the policy. To determine correctly the interplay between these various provisions does indeed require a modicum of mental gymnastics, but when this task is performed no ambiguity is discerned. Instead, while the policy is anything but a model of straightforward legal draftsmanship, the conclusion is inescapable that coverage for mechanical breakdown of specialized medical equipment was limited in the policy to the $100,000 which plaintiffs have been paid.
 
 
 43
 AFFIRMED.